JOYCE E. WEBB, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; CHARLES L. WEBB, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Webb v. Commissioner
Docket Nos. 15858-89, 15859-89
United States Tax Court
T.C. Memo 1990-581; 1990 Tax Ct. Memo LEXIS 652; 60 T.C.M. (CCH) 1229; T.C.M. (RIA) 90581; November 13, 1990, Filed *652 Decision will be entered under Rule 155. Billy C. Burney, for the petitioners. J. Craig Young, for the respondent. COUVILLION, Special Trial Judge. COUVILLION
MEMORANDUM OPINION These consolidated cases were instituted under section 7463. [1] At trial, petitioners moved, under Rule 172(c), that the cases be considered under section 7443A(b)(3) and Rule 180 et seq. Petitioners' motions were granted. *657 Respondent determined deficiencies and additions to petitioners' Federal income taxes as follows: Joyce E. Webb, Docket No. 15858-89
Additions To Tax
Section Section Section Year
Deficiency
6651(a)(1)
6653(a)(1)
6653(a)(2)
1984
$ 3,293.00
--
$ 164.65
* 1985
$ 3,108.00
$ 31.85 $ 163.50
* Charles L. Webb, Docket No. 15859-89
Additions To Tax
Section Section Section Year
Deficiency
6651(a)(1)
6653(a)(1)
6653(a)(2)
1984
$ 1,347.00
$ 100.00
$ 67.35 * 1985
$ 1,472.00
$  20.59
$ 73.60 * Some of the issues are common to both petitioners and other issues relate to each petitioner individually. The *658 common issues are (1) substantiation of expenses attributable to petitioners' farming or horse breeding activities; (2) credits against the tax under section 21 for household and dependent care services (the child care credit) and for political contributions under section 24; and (3) the additions to tax under sections 6651(a)(1), 6653(a)(1), and 6653(a)(2). As to Mrs. Webb, the issue is her entitlement to charitable contribution deductions under section 170(a) for the two years in question. As to Mr. Webb, the issues are, for both years, his entitlement to (1) head of household filing status under section 2(b); and (2) credits against the tax for earned income under section 32(a). All other adjustments are technical adjustments affecting Mrs. Webb, which will be resolved by the contested issues: (1) Her entitlement to a credit against the tax for gasoline and special fuels under section 34(a)(1) with respect to fuel purchased in connection with her farming or horse breeding activity; (2) the earned income credit under section 32(a) for 1984; and (3) deductions for medical and dental expenses under section 213(a) for 1984 and 1985. Respondent filed answers in both cases and alleged *659 affirmatively that, in the event petitioners substantiated the expenses incurred in their farming/horse breeding activities, the activities were nevertheless not engaged in for profit under section 183 and, accordingly, the deductions attributable to such activities should be limited to those allowable under section 183(b). [2]
*660 Petitioners alleged that respondent was barred under section 6501(a) from making any assessments against them for the years at issue. Respondent affirmatively alleged otherwise and, at trial, petitioners conceded the issue. Some of the facts were stipulated and are found accordingly. The stipulations of facts and attached exhibits are incorporated by reference. At the time the petitions were filed, petitioners resided in Alabama. Petitioners were married in 1976 and divorced in 1980. They had one son, Robert Kyle Webb (Kyle), born on December 24, 1978. Mrs. Webb also had a son by a prior marriage, Marlon Blankenship (Marlon), born October 3, 1974, who lived with her during the years at issue. Mrs. Webb is a registered nurse and worked full time during 1984 and 1985. Mr. Webb drove an ambulance and also worked as a hospital orderly during the years in question. In 1978, petitioners purchased seven acres of land and a house near Mount Mariah in Lawrence County, Alabama, with the intention of using the land for horse breeding. Petitioners improved the property by building fences and a barn and bought two unregistered mares in 1978, which they bred through the stud services *661 of a nearby horse farm. Mrs. Webb broke young horses for the owner of the other horse farm in exchange for stud services. Petitioners testified they realized a profit from their horse breeding activity in 1979. In 1980, Mrs. Webb suffered a serious injury to her hand while working with one of the horses. She was hospitalized for three weeks and had four surgeries. Later that year, she was thrown from a horse and broke her arm. After these incidents, petitioners sold their horses and equipment. Petitioners were divorced in May 1980. For all intents and purposes, their parting appears to have been amicable, being best described by their attorney, who explained to the Court that petitioners did not leave each other in a "blaze of gunfire." After an absence of approximately three weeks, Mr. Webb returned and moved into a small trailer located on the property, a distance of 200 or 300 feet from Mrs. Webb's house. In the divorce, Mrs. Webb was awarded custody of petitioners' son, Kyle. During 1984 and 1985, Kyle lived with Mr. Webb in the trailer near Mrs. Webb's house, although Mrs. Webb retained custody and provided most of his financial support. In late 1980, following their *662 divorce, petitioners decided to resume horse breeding activities, sharing the pasture and assisting each other with labor, but with each acquiring horses individually, paying expenses individually, and realizing individual profits or losses from their separate activities. Petitioners continued horse breeding through taxable year 1985, with each realizing a profit in 1981 and losses for each taxable year thereafter. Petitioners kept no formal books or records of their horse breeding activities, although they did retain some receipts and canceled checks. Receipts and canceled checks for these expenses were provided to their return preparer, John Letson, on approximately a monthly basis. Mr. Letson prepared returns for Mrs. Webb prior to her marriage to Mr. Webb. He prepared joint returns for petitioners during their marriage and prepared separate returns for each of them after their divorce. Each year, in mid-February, petitioners delivered the Forms W-2 they received from their employers and any receipts and canceled checks relating to their horse breeding activities that had not been previously provided for preparation of their individual Federal income tax returns. Thus, *663 documents for preparation of the 1984 returns were delivered to Mr. Letson in February 1985, and documents for the 1985 returns were delivered in February 1986. Petitioners typically left the documents with Mr. Letson and returned to his office to sign the returns when notified at a later date by Mr. Letson or his employees. On at least one occasion, Mrs. Webb signed blank tax return forms, expecting the signed form to be completed later by Mr. Letson. Petitioners relied upon Mr. Letson to mail the completed, signed returns to respondent. Although petitioners provided information for the 1984 and 1985 returns to Mr. Letson prior to the unextended due dates for each year, no returns were filed for either petitioner for taxable years 1984 and 1985 until May 1986. In 1984, Mr. Letson learned he was under criminal investigation by respondent, and he cited that investigation as the reason he did not file petitioners' 1984 and 1985 returns until May 1986, although he testified the returns had been prepared prior to that date. He stated that, because of the criminal investigation, he was "afraid" to file petitioners' returns when they were due. Each of petitioners' returns for 1984 *664 and 1985 were dated May 5, 1986, and were received by respondent on May 16, 1986. Petitioners assumed Mr. Letson had timely filed their returns and never inquired of him whether he had filed the returns. Petitioners were unaware of the criminal investigation of Mr. Letson until 1987 and did not know Mr. Letson's failure to timely file tax returns on their behalf until they received the statutory notices of deficiency determining section 6651(a)(1) additions. Respondent's determinations are presumed correct, and petitioners bear the burden of showing respondent's determinations are in error. Welch v. Helvering, 290 U.S. 111 (1933). However, to the extent of issues raised by respondent's affirmative allegations, the burden of proof on such issues is on respondent. Rule 142(a). Petitioners presented no evidence to substantiate the claimed expenses attributable to their horse breeding activities other than their testimony that they paid for horse feed at an unspecified cost and incurred expenses to transport feed, also in unspecified amounts. No documentary evidence of any kind was presented by petitioners. Mr. Letson testified that some of the documents given *665 to him by petitioners with respect to taxable years 1984 and 1985 were lost in December 1985 in a fire that destroyed the contents of a building where they were stored. However, Mr. Letson's workpapers, prepared contemporaneously with delivery of the documents throughout 1985 and used to prepare the 1985 returns, were not destroyed, nor were documents delivered to him by petitioners after December 1985 for preparation of the 1985 returns. Additionally, Mr. Letson testified that petitioners had "gathered up some records" which they delivered to him after the date of the fire, and which he subsequently delivered to respondent pursuant to a district court order enforcing respondent's summons. [3] However, none of these documents, or any others, were made part of the stipulation or otherwise produced by petitioners for this Court's consideration. Accordingly, petitioners failed to substantiate their claimed deductions. *666 Even if petitioners had substantiated their deductions, the Court finds that their activities were not engaged in for profit under section 183. The Court is not satisfied that petitioners had an actual and honest objective of making a profit from their horse breeding activities. Both were employed full time in their respective vocations, and a good portion of Mrs. Webb's employment as a nurse was at night. Their activities in raising horses, at best, were very limited, and no evidence was presented to establish how, if ever, their activities would or could become profitable. The facts fall short of the standards prescribed in section 1.183-2(b), Income Tax Regs., in determining when an activity is engaged in for profit. Petitioners' activities were best summarized by Mr. Webb when questioned as to how much profit they realized in earlier years: "No, I don't [know]. We did not keep books, so we didn't sit down at the end of the year and say, 'here is what we made.' * * * We just hoped to prosper * * * and you know whether you have done well or not at the end of the year * * * by what you have left." On this record, therefore, the Court finds that *667 petitioners' activities were not engaged in for profit under section 183. The Court notes that Mr. Webb reported gross income of $ 927 and $ 1,174, respectively, for 1984 and 1985 from his horse breeding activity, and Mrs. Webb reported, respectively, for these years $ 1,430 and $ 1,416 gross income. The Court is satisfied, under Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930), that petitioners incurred expenses equal to the gross income reported each year from their horse breeding activities. Accordingly, petitioners are allowed, under section 183(b)(2), a deduction of expenses each year equal to the gross income reported.[4]
Mr. Webb filed his 1984 and 1985 tax returns claiming head of household status and claimed earned *668 income credits based upon petitioners' son, Kyle, having been a member of his household for these two years. Respondent disallowed the head of household status and earned income credit based upon the determination that Kyle resided with Mrs. Webb during the years at issue. "Head of household" status is available to an unmarried individual who maintains as his home a household which is the principal place of abode for his unmarried child for the taxable year. Section 2(b)(1). [5]Section 32(a) provides an earned income credit for "eligible individuals," including persons entitled to claim head of household status. Section 32(c)(1)(iii). Although the record shows that Mrs. Webb had custody of him, the Court finds that, during 1984 and 1985, Kyle lived with Mr. Webb in the trailer near Mrs. Webb's house. Accordingly, Mr. Webb maintained as his home a household which was the principal place of abode for his unmarried child for the taxable years 1984 and 1985. Therefore, respondent's determinations *669 on the issues of Mr. Webb's head of household status and earned income credits are not sustained. However, the dependency exemption of Kyle for both years under section 151(a) was properly claimed by Mrs. Webb, since she was the custodial parent under the decree of divorce and provided more than one-half of his support. Section 152(a); section 1.152-4, Income Tax Regs.
Mrs. Webb claimed child care credits in the amounts of $ 123 and $ 510, respectively, for 1984 and 1985, under section 21, for expenses incurred for day care for her sons, Kyle and Marlon. The expenses claimed were $ 480 and $ 1,890, respectively, *670 for the years in question. Respondent disallowed the credits for lack of substantiation. Mrs. Webb described the arrangement petitioners had for child care while petitioners were at work: "If we were both at work -- I worked day shift, and Charles worked nights. So, if I was at home, I kept them. If he was at home, he kept them. And, if not, the babysitter kept them." Mrs. Webb testified that, on occasion, she paid $ 5 per day to various individuals for day care for her son, Marlon, such payments being necessary because she was employed full time as a registered nurse. However, Mrs. Webb presented no written evidence to show the amounts paid for child care and did not know how many days she had required day care services during these years. She testified that any expenses incurred for day care for Kyle were paid by Mr. Webb. Under section 21(a), a credit against the tax is allowed as a percentage of employment-related expenses incurred by a taxpayer who maintains a household which includes one or more qualifying individuals, if such expenses are incurred to enable the taxpayer to be *671 gainfully employed, and such expenses are for the care of the qualifying individual. A "qualifying individual" under section 21(b)(1)(A) means a dependent of the taxpayer who is under the age of 13 and with respect to whom the taxpayer is entitled to a deduction under section 151(e). Since Mrs. Webb was employed full time during 1984 and 1985, the Court is satisfied that some amount was expended by her for the care of her son, Marlon, a qualifying individual, which enabled her to be gainfully employed. Using our best judgment under Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930), the Court estimates that the child care expenses paid by Mrs. Webb for Marlon were $ 300 per year for each year in question. Mrs. Webb, therefore, is allowed a child care credit for 1984 and 1985 based upon this amount. Mrs. Webb is not entitled to a credit for expenses related to child care for Kyle because his employment-related expenses were paid by Mr. Webb. Mr. Webb claimed child care credits in the amounts of $ 244 for 1984 and $ 274 for 1985 for expenses incurred with respect to Kyle. Although the Court is satisfied that Mr. Webb did pay some amount for child care expenses *672 for Kyle, the credit under section 21(a) is available only if the taxpayer is entitled to the dependency exemption under section 151(e) (now section 151(c)) for the qualifying individual. Section 21(b)(1)(A). Since Mrs. Webb was entitled to the section 151(e) dependency exemption for Kyle for 1984 and 1985, Mr. Webb is not entitled to the section 21(a) credit for child care expenses for Kyle. Respondent disallowed, for lack of substantiation, political contribution credits in the amount of $ 50 claimed by petitioners on each of their 1984 and 1985 tax returns. Section 24(a) allows a credit in an amount equal to one-half of all political contributions made within the taxable year. The maximum allowable credit is $ 50. Section 24(b). The only evidence offered by petitioners on this issue consisted of their testimony that each gave $ 100 to candidates for local office in 1984. Neither petitioner could recall with certainty any political contributions made in 1985. The Court finds that petitioners *673 failed to substantiate their claimed political contributions. Respondent's determinations on this issue are, therefore, sustained. Mrs. Webb claimed charitable contribution deductions of $ 250 and $ 552, respectively, for 1984 and 1985, which were disallowed by respondent for lack of substantiation. At trial, Mrs. Webb presented no evidence to support her claimed contributions. Accordingly, respondent's determination on this issue is also sustained. Respondent determined the addition to tax under section 6651(a)(1) against Mr. Webb for 1984 and 1985, and against Mrs. Webb for 1985, for failure to timely file their individual income tax returns. Returns of each petitioner for the years 1984 and 1985 were received by respondent on May 16, 1986. All four returns bore a signature date of May 5, 1986. No credible evidence of a valid request for extension of time to file the returns for either taxable year was presented by petitioners. Although the return preparer testified that he submitted a request for an extension of time to file the 1985 return, respondent's records reflect that no extension requests were received for either 1984 or 1985. Petitioners offered no explanation *674 for the untimely filing other than they relied upon their return preparer to file the returns for them, and that he failed to file them timely. Section 6651(a)(1) provides for an addition to tax in case of failure to file an income tax return on the date prescribed therefor, unless it is shown that such failure was due to reasonable cause and not due to willful neglect. The failure to make a timely filing of a tax return is not excused by the taxpayer's reliance on an agent, and such reliance is not "reasonable cause" for a late filing under section 6651(a)(1). United States v. Boyle, 469 U.S. 241, 252 (1985). Petitioners' returns were not timely filed, and no reasonable cause for the failure to timely file was shown. Therefore, respondent's determinations of additions to tax under section 6651(a)(1) are sustained. Respondent also determined additions to tax against petitioners under section 6653(a)(1) and (2). Section 6653(a)(1) applies if any part of an underpayment of tax *675 is due to negligence or intentional disregard of rules or regulations. Section 6653(a)(2) applies only to that portion of an underpayment attributable to negligence or intentional disregard of rules or regulations. Negligence is the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). On this record, the Court sustains respondent's determination of the additions under section 6653(a)(1) and (2). The principal adjustments in these cases involved respondent's disallowance of petitioners' farming or horse breeding activities. Petitioners produced no records to substantiate the deductions claimed by them with respect to these activities. Although they claimed their records were destroyed in a fire while in custody of their preparer, they produced no records or other available evidence which would corroborate their claimed expenses. The Court doubts very seriously that petitioners had any meaningful records based on Mr. Webb's testimony that he and Mrs. Webb kept no records. Petitioners' lack of good faith is not at all enhanced by the manner in which *676 they filed their separate returns with regard to their son Kyle. On Mrs. Webb's 1984 and 1985 returns, in claiming Kyle as a dependent, his name was listed as "Robert." Mr. Webb, on the other hand, in claiming head of household status for 1984 and 1985, identified the qualifying individual for whom he maintained a household as "Kyle." The child's complete name was "Robert Kyle." Since the returns of both petitioners were prepared at the same time by the same preparer, it is evident that petitioners intended to deceive respondent on this question. The deception which is implicit in the way petitioners filed their returns satisfies the Court that petitioners negligently or intentionally disregarded rules or regulations. Decisions will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954 as amended and in effect for the taxable years in question, unless otherwise indicated. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
*. 50 percent of the interest due on the deficiency.↩
*. 50 percent of the interest due on the deficiency.↩
2. The Court notes that, as to Mr. Webb's 1984 tax year, respondent disallowed the child care credit in the amount of $ 269. Although the Form 2441 of Mr. Webb's 1984 return calculated this credit at $ 269, only $ 244 was claimed on Line 41 of Form 1040 of the return. The correct amount of the adjustment, therefore, should be $ 244 instead of $ 269. Additionally, with respect to Mrs. Webb's 1984 tax year, her return for that year included a Form 3800 and computation of an investment credit of $ 535. No portion of this credit was claimed on her 1984 return; however, a notation on Form 3800 states that the credit was carried back to 1981. The notice of deficiency disallowed the investment credit and properly made no adjustment thereto with respect to the 1984 tax year, since no portion of the credit was claimed that year. However, the 1981 tax year was not addressed in the notice of deficiency; consequently, it is not known whether the investment credit was in fact carried back to that year and, if so, whether it was adjusted. The parties offered no explanation to the Court for this hiatus.↩
3. Mr. Letson had initially declined to return petitioners' records to them or produce them to respondent during respondent's criminal investigation of Mr. Letson on the advice of his attorney.↩
4. The Court recognizes that Mrs. Webb reported interest and taxes paid in connection with her activity for 1984 and 1985; however, since these items were not substantiated, the Court declines to find that these items are allowable as deductions under section 183(b)(1)↩.
5. For taxable years beginning after December 31, 1984, the statute requires that the home be the principal place of abode for the child for more than one-half of the taxable year. Section 2(b)(1), as amended by section 423(c)(2)(A)↩, Deficit Reduction Act of 1984, 98 Stat. 799.